**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| THOMAS BROKAMP, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | ) Cause No. 1:14-cv-2104-WTL-MJD |
| | ) |
| NIXON TOOL COMPANY, INC., | ) |
| | ) |
|   Defendant. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendant's motion for summary judgment (Dkt. No. 39). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

**I. STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence

of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND FACTS

The background facts of record, viewed in the light most favorable to Plaintiff Thomas Brokamp, the non-moving party, are as follow. Additional relevant facts are included in the discussion section below.

Brokamp was hired by Defendant Nixon Tool Company, Inc. ("Nixon Tool") in 1996. There is no dispute that he was a highly skilled, experienced, and talented toolmaker; nor is there any dispute that his skills were valuable to Nixon Tool, which is a small, family-owned company.

A few years after he began at Nixon Tool, Brokamp was promoted to the position of group leader in the bench area where he had been working. In 2005, the president of Nixon Tool, David Nixon, turned operation of the company over to his son, Scott Nixon (hereinafter referred to as "Nixon"), who had been serving as vice president since 1997.

In July 2012, Nixon demoted Brokamp from the position of group leader. Nixon told him that there had been complaints from other employees who found Brokamp difficult to work with. He also told him that the position of group leader in the bench area was being eliminated; however, two weeks later, Nixon appointed Randy Oldham, who was 44 years old, to the position of group leader. Brokamp was 58 at the time. Following his demotion, Brokamp continued to work in the bench area, primarily operating the lathe, an area where his skills were particularly useful to the company.

Over the years, Brokamp developed a relationship with one of Nixon Tool's long-time customers, D&S Tire, and became the main point of contact between Nixon Tool and D&S

Tire's representative, Doug Bower. In order to "cut through the red tape," Brokamp had Bower or his boss contact Brokamp directly on his cell phone so that he could more quickly assist them with their toolmaking needs. In early 2013, Nixon informed Bower that Brokamp would no longer be his point of contact at Nixon Tool; rather, Bower should initiate his orders through the front office. When Brokamp learned about this, he asked Nixon why the change was being made; Nixon informed him that he "didn't want any jobs coming in the back door anymore" and "wanted the customers to all come through the front door and process through the office." Brokamp Dep. at 30. During this exchange, Brokamp expressed to Nixon that he felt as if he were being pushed out because of his age and "just kept asking what's going on, what are you doing?" *Id.* at 32.

In May 2013, Nixon terminated Nixon Tool's vice president, Donald Winchester, who was 65 years old; he was replaced by Jeremy Spears, who was 35.

On October 2, 2013, Nixon "had had it with what was going on in the shop"; specifically, with employees "bad-mouthing" the company and gathering at Brokamp's work station to complain about how the company was being run. Nixon Dep. at 50. He decided to confront the three employees he believed were the main offenders—Brokamp, Charlie King, and Jimmie Issacs—and ask each of them whether they wanted to continue working at Nixon Tool. He approached King first; when King responded that he did want to work there, Nixon told him that he "need[ed] him to start coming to my office with anything that you have to complain about so that we can work on that together and not spend time in groups complaining about the company." *Id.* at 55. King responded that he would do so; he continued to work for Nixon Tool. King was 61 years old at the time.

Nixon next approached Isaacs, who was 69 years old and had previously retired and then returned to work at Nixon Tool. When Nixon asked Isaacs if he wanted to work there, Isaacs responded: "If you think I'm going to retire, I'm not. I want unemployment, and so you're going to have to lay me off or fire me so that I'll get unemployment and I'll be done. That way you won't have to worry about me retiring because it isn't going to happen." *Id.* at 56-57. Nixon told him that if that's what he wanted, then he was laid off; Isaacs packed his things and left.

Finally, Nixon approached Brokamp and asked him whether he wanted to work for Nixon Tool. Brokamp and Nixon remember the details of their conversation somewhat differently. Nixon testified that Brokamp responded "No, that's not the question. . . . The question is, do you want me to work here?" *Id.* at 61. When Nixon responded "no," Brokamp packed up his things and left. Brokamp testified that Nixon asked him if he wanted to work there and

> My response was, I don't know, I thought I was. I mean, I'm standing here at this machine working. And his response was, well, you're going to have to stop talking about the company. I don't know what any of this means I didn't have any specific information about what this means or, you know, no specific data. . . . I mean, I said something about you think the place is so great or something, but I don't – I didn't know what he was talking about. . . . And he said, if you don't stop talking about the company, you're not going to be able to be employed or you're not going to be employed. And I said, what are you doing, are you laying me off? And he said yes.

Brokamp Dep. at 40-41. Brokamp then packed up his things and left.

### III.  DISCUSSION

Brokamp alleges that he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*. Brokamp has chosen to respond to Nixon Tool's motion for summary judgment using the direct method and

4

circumstantial evidence. To survive summary judgment on his ADEA claim, Brokamp thus must

> offer evidence from which an inference of discriminatory intent can be drawn, such as: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.

*Teruggi v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 659-60 (7th Cir. 2013) (citation and internal quotation marks omitted). "[T]he circumstantial evidence must be strong enough, taken as a whole, to allow the trier of fact to draw the necessary inference"; that is, "[i]f the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate, and the plaintiff may prevail at trial even without producing any 'direct' proof." *Morgan v. SVT, LCC,* 724 F.3d 990, 995-96 (7th Cir. 2013).

The bulk of Brokamp's brief is devoted to arguing that the stated reason for his termination was pretextual.

> A mere mistake by an employer does not constitute pretext; instead, pretext is a phony excuse. Where an employer proffers more than one reason for the challenged action, a plaintiff must address all of the employer's suggested reasons. But the court will not reexamine business decisions as a "super-personnel department"; instead, the important consideration is whether the employer gave an honest explanation of its behavior. Finally, if the employer changes its story, that constitutes evidence of pretext, and entitles the plaintiff to a trial on the issue of the reason for his termination.

*Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 778 (7th Cir. 2013) (internal quotation marks and citations omitted). After testifying that Brokamp lacked people skills and was difficult to get

5

along with generally, Nixon was asked what happened on October 2, 2013, to cause him to decide to terminate Brokamp. Nixon answered as follows:

> A: Because on that particular day, I had had it with what was going on in the shop. The gathering and meetings that I wasn't included in that I was paying for by the employees. The bad-mouthing of the company and the way it operated. And that particular day was the day I decided to confront all three of the ones that I felt were the issue.
>
> Q: And that's [King, Isaacs, and Brokamp]?
>
> A: Correct.
>
> Q: Okay. Now, when you say the gathering and the meetings, what were those gatherings and meetings?
>
> A: I don't know[.] I wasn't included.
>
> Q: How did you know they were happening?
>
> A: I could see them.
>
> Q: And who did you see in those gatherings and meetings?
>
> A: [King, Isaacs, and Brokamp].
>
> Q: It was just the three of them meeting?
>
> A: Pretty regular.
>
> Q: And where would they be meeting?
>
> A: At [Brokamp's] bench.
>
> Q: Did you know what they were discussing at those meetings?
>
> A: No. Why would I be included in that?
>
> Q: Why did you think you needed to be included in that?
>
> A: Because it was negativity all over the place that was affecting the other guys around them and me. And why would I pay them to spend time complaining negatively about the company? The company doesn't want to pay them to do that.
>
> Q: Okay. How did you know that they were being negative?

6

> A: Oh, it gets back. . . . . They don't just talk to each other, but they talk to other people and it gets back what gets said.
>
> Q: And how did it get back?
>
> A: People talk.
>
> Q: Who talked?
>
> A: Employees talked.
>
> Q: Which employees talked?
>
> A: Most of them.

Nixon Dep. at 50-52. When asked to list who had reported that King, Isaacs, and Brokamp were making negative comments, he listed Jon Haselby, Troy See, Von Addison, Justin Sittloh, Jake Jones, Randy Oldham, and Doug Anderson. *Id.* at 53.

Brokamp advances several arguments in support of his belief that Nixon Tool's stated reason for terminating him is pretextual. First, he argues that "Nixon has offered no substantiation that these meetings occurred or that they were reported to him." Dkt. No. 46 at 16. But Nixon testified that he observed the three of them meeting and he was told by numerous employees that King, Isaacs, and Brokamp were making negative comments about the company. Nixon Tool is not required to present any further substantiation. It is Brokamp's burden to prove pretext; Nixon Tool does not have to disprove it. *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 826 (7th Cir. 2006) ("Moreover, in arguing that a lack of documentation supports a finding of pretext, the plaintiffs confuse [the defendant's] burden with their own burden.").

Brokamp suggests that he has created a genuine issue of fact on the issue of pretext because he denies that he ever "met with Isaacs and King on the floor of the shop or in any other location to complain about the company." Brokamp Dec. at ¶ 10. However, Brokamp testified

7

that he and members of his department "frequently met on the floor to discuss pending jobs or work flow after the company had terminated regular meetings of the department at Scott Nixon's request." *Id.* at ¶ 11. Brokamp also conceded in his deposition that he made "disparaging remarks about Scott Nixon or how Nixon Tool was being operated" to co-workers, including Troy See, Jimmie Isaacs, and Mike Schlehuser. Nixon's testimony was that he observed meetings and that he concluded that they were discussing their complaints about the company based upon the "talk" of other employees. Nixon may have misinterpreted work-related meetings as griping sessions, but that means he was wrong, not lying. Neither is the fact that Brokamp was not given a warning about his behavior evidence of pretext. An employer is not required to give warnings before terminating an employee; indeed, there is no evidence that Nixon Tool—a small, family-owned business—had a progressive discipline policy.[1]

Brokamp also attempts to use the testimony of Troy See to dispute Nixon's claim that he complained excessively. However, while Brokamp correctly cites See's testimony that "everybody complains" and "that's why they call it 'work,'" he fails to acknowledge that that answer was given in response to the question of whether other people besides Brokamp complained about the management of the company, and that when asked whether he was surprised that Brokamp was terminated he answered no, because Brokamp "had an attitude at the time. . . . [I]t was obvious that he was disgruntled with things, and, you know, he was probably more outspoken than others." See Dep. at 16-17.

---

[1] In fact, Nixon did not simply fire Brokamp, but rather asked him whether he wanted to continue working for Nixon Tool and fired him only when he did not answer in the affirmative. If he had answered in the affirmative, like King, he would essentially have received a warning to stop complaining and continued as a Nixon Tool employee.

Brokamp next disputes Nixon Tool's claim in its brief that Brokamp was "insubordinate." This seems to be largely a question of semantics, as Brokamp argues that "Nixon cannot identify a single order that Brokamp refused to follow, a single time Brokamp disrupted shop operations, or even pinpoint the date that Brokamp came to complain to Nixon about the way he was being treated." Dkt. No. 46 at 17. However, the insubordination referred to by Nixon Tool is Brokamp's complaining to other employees, discussed above, and his disrespectful behavior toward Nixon. Nixon Tool has supported the latter with the affidavits of two employees who witnessed at least one such incident, which occurred when Brokamp learned that he had been removed as the lead contact for the D&S tire account. And while Brokamp states in his declaration that he was "professional in his demeanor" when he confronted Nixon about the change, he conceded in his deposition that he was upset about the change, that he felt like he was "being pushed out," and that he "just kept asking what's going on, what are you doing?" Brokamp Dep. at 31-32. It is not unreasonable to characterize confronting one's boss in front of other employees and refusing to accept his explanation for a decision as "insubordination."

Next, Brokamp argues that the fact that Nixon removed Brokamp from the D&S Account several months before his termination is evidence of discrimination because (1) Nixon's reason for doing so is pretextual; and (2) his removal is evidence that Nixon planned to terminate him months in advance. Nixon testified that he removed Brokamp as the lead contact for D&S Tire because he wanted all customer orders to come through the front office so that they could be properly documented and Brokamp had been taking orders directly from D&S Tire "through the back door" and communicating with them directly on his personal cell phone. He also testified that because Brokamp was handling the orders that way, it was not clear whether Brokamp was

9

properly documenting the orders and whether the customer was being properly charged.[2] Brokamp does not dispute that he was handling the D&S Tire account in this manner; he simply does not see anything wrong with doing so, and believes he should have been warned before the account was removed. Brokamp's disagreement with Nixon's reasoning is not evidence of pretext, however, and there is nothing inherently suspicious or unreasonable about Nixon wanting the company's business to be handled through the front office and not through direct communication with a tool maker.[3] And while Brokamp argues that using his personal cell phone to better serve the needs of D&S Tire was just good modern customer service, "[a]n inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) (citations omitted). In other words, as noted above,

---

[2] Brokamp attempts to call Nixon's credibility into question by suggesting that Spears' testimony regarding Brokamp's failure to turn over drawings of parts he made for D&S Tire conflicts with Nixon's. However, Spears was not involved in the decision to take the account from Brokamp, and Spears' testimony is that during the time Brokamp was responsible for the account, he was not sure whether Brokamp was giving him all of the drawings, which is consistent with Nixon's testimony that he had "a hard time" getting Brokamp to give Spears the drawings and he wanted to implement a system in which he would know that was occurring.

[3] Of course, it is possible that the jury could find Nixon's testimony not credible, even though it is not inherently so. However, "a party cannot defeat summary judgment with resort to attacks on credibility alone." *Morgan v. SVT, LLC*, 724 F.3d 990, 999 (7th Cir. 2013); *see also Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (cited in *Morgan*) ("[W]hen challenges to witness' [sic] credibility are all that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper."). In other words, in the absence of evidence that shows a witness's testimony is false, speculation that the witness is lying cannot be used to defeat summary judgment. *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) ("Lacking such evidence, Argyropoulos's argument rests on speculation that the City's employees lied to conceal their true motives. Such speculation will not withstand summary judgment."); *Springer*, 518 F.3d at 484 ("'It is well-settled that speculation may not be used to manufacture a genuine issue of fact.'") (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) and citing *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001) ("The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. . . . Speculation will not suffice.")).

> [p]retext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is lie, specifically a phony reason for some action. Thus, in assessing a plaintiff's claim that an employer's explanation is pretextual, we do not sit as a "super personnel review board" that second-guesses an employer's facially legitimate business decisions. Rather, we ask only whether the employer's explanation was "honestly believed."

*Argyropoulos v. City of Alton,* 539 F.3d 724, 736 (7th Cir. 2008) (citations and internal quotation marks omitted); *see also Teruggi*, 709 F.3d at 661 (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010) ("An unwise employment decision does not automatically rise to the level of pretext; rather, a party establishes pretext with evidence that the employer's stated reason or the employment decision 'was a lie—not just an error, oddity, or oversight.'")).

Finally, Brokamp argues that the reasons Nixon gave for demoting him were also pretextual. It is true that Nixon testified in his deposition that one of the reasons he demoted Brokamp was because he was not working well with apprentices and that he pointed to two particular apprentices who started in 2010, nearly two years prior to Brokamp's demotion. Although Nixon gives other reasons for his decision, the inconsistencies surrounding this testimony create an issue of fact regarding what the true reason for that demotion was. However, the demotion was not related to Brokamp's termination, which occurred years later.

Even if a reasonable jury could infer that if the reasons given for his demotion were pretextual the reasons given for his termination must also have been pretextual, a plaintiff proceeding under the direct method, as Brokamp is, must do more than point to evidence from which a reasonable jury may conclude that the defendant's stated reason is pretextual; he must produce evidence that points directly to discrimination as the actual reason. *Hitchcock v. Angel Corps, Inc.,* 718 F.3d 733, 740 (7th Cir. 2013) ("Of course, a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus."); *Van Antwerp*, 627 F.3d at 298-99 ("We also note that, assuming Van Antwerp

11

marshaled enough circumstantial evidence to show pretext, his claim of discrimination under the direct method would still fail. Evidence offered under the direct method 'must allow a jury to infer more than pretext; it must itself show that the decisionmaker acted because of the prohibited animus.'") (quoting *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2003) and citing *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) ("[C]ircumstantial evidence . . . must point directly to a discriminatory reason for the employer's action. Otherwise, the plaintiff must proceed by way of the well-known indirect route.")); *see also Hester v. Indiana State Dept. of Health*, 726 F.3d 942, 948-49 (7th Cir. 2013) (even if employer fabricated a stated reason for termination, "nothing in this account points to discrimination as the real reason for the Department's action. Gentry and other supervisors may have treated Hester poorly out of personal animosity.  That might violate the state's law prohibiting merit employees from being terminated without 'just cause,' but it does not leave gender or race as the only alternative explanation."); *Teruggi*, 709 F.3d at 661 ("Even if Teruggi's evidence showed pretext, that alone would not be sufficient to survive summary judgment under the direct method.").

The only circumstantial evidence Brokamp points to other than pretext is the fact that Nixon Tool also terminated two other older, long-term employees:  Donald Winchester, a few months prior to Brokamp; and Jimmie Isaacs, the same day and under the same circumstances as Brokamp.  The only evidence of record regarding why Winchester was terminated is the testimony of Troy See that it was related to drug use; there is absolutely nothing in the record to suggest that Nixon Tool did not have a valid, non-discriminatory reason for terminating him. That leaves only the fact that both Isaacs and Brokamp are older and were terminated on the same day.  That is simply not sufficient evidence to support a finding of age discrimination.

There is no evidence of any age-related comment by anyone other than Brokamp himself; Brokamp's termination did not make way for a younger employee; and there is no evidence that suggests that Nixon Tool systematically treated younger employees better than older ones.  In other words, Brokamp has not presented sufficient "scraps of circumstantial evidence" from which a reasonable jury could conclude that he was terminated because of his age.  Accordingly, Nixon Tool is entitled to summary judgment.

### IV.  CONCLUSION

For the reasons set forth above, Nixon Tool's motion for summary judgment is **GRANTED** in its entirety.

SO ORDERED: 6/6/16

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification